# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3202

_____

United States of America

*Plaintiff - Appellee*

v.

Elbert J. Holly

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 25, 2020
Filed: December 18, 2020

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Elbert J. Holly was charged with being a felon in possession of a firearm. *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Holly moved to suppress all evidence and testimony obtained as a result of the Kansas City Police Department's search and

seizure of his vehicle.  The district court[1] denied the motion to suppress, and, within the terms of his conditional plea agreement, Holly now appeals.  Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

## I.  Background

On August 5, 2017, Officers Evan Tarwater and Slade Whetro patrolled an area of Kansas City, Missouri, which they believed had a high incidence of narcotic sales.  The officers observed a small red SUV parked on East 49th Street with a single male occupant—later identified as Holly—seemingly waiting for someone or something.  The officers drove past and parked their patrol vehicle in order to observe Holly.  Soon after, the officers witnessed Holly participate in what they believed to be a hand-to-hand narcotics transaction.  When Holly started to drive away, the officers followed his SUV toward College Avenue.

Although they did not observe Holly turn onto College, based on their experience and knowledge of the area, the officers expected Holly to turn onto College and proceed to Swope Parkway.  The officers attempted to "cut-off" Holly's SUV by turning north onto Agnes Avenue.

Officer Whetro testified that upon turning onto Agnes, he maintained visual contact with the SUV for all but "a half a second," when the officers passed a berm that was in the area between Agnes and College.  Whetro, who was sitting in the passenger seat of the patrol vehicle, testified his field of vision opened up once the officers turned onto Swope and the berm no longer blocked his view.  He further testified that as he looked to his right, he could see the SUV fail to stop at the intersection of College and Swope.  Officer Tarwater testified that based on his

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Matt J. Whitworth, United States Chief Magistrate Judge for the Western District of Missouri, now deceased.

training and experience and the speed of Holly on College and in the intersection, he did not believe there was any way Holly stopped at the stop sign.

After continuing to follow Holly for a short time, the officers initiated a traffic stop. During the stop, the officers recovered a firearm from the vehicle and what was believed to be crack cocaine.

A grand jury indicted Holly on one count of being a felon in possession of a firearm. Holly moved to suppress all evidence and testimony obtained as a result of the search and seizure of his vehicle and person. Holly argued the officers did not have reasonable suspicion or probable cause to initiate the traffic stop.

At the suppression hearing, Holly presented evidence from federal public defender investigators contesting whether the officers could actually see him fail to stop at the stop sign. Holly's investigators presented evidence that due to a physical obstruction in the officers' vision, specifically the berm between Agnes and College, it was implausible that the officers saw Holly's vehicle at the stop sign at the intersection of College and Swope. The investigators based their opinion on a recreation of the factual circumstances giving rise to the traffic stop.

Following the hearing, the district court denied Holly's motion to suppress. The district court specifically noted that while it found the testimony of all parties credible, it found the testimony of Officers Tarwater and Whetro to be more credible as to the facts surrounding the visibility of the intersection at College and Swope. Holly subsequently agreed to a conditional plea agreement and now appeals the denial of his motion to suppress.

## II. Discussion

Holly argues the district court erred in concluding the officers had reasonable suspicion to stop his vehicle. We review the denial of the motion to suppress under a mixed standard of review. *United States v. Williams*, 777 F.3d 1013, 1015 (8th

Cir. 2015). "We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review." *Id.* (quoting *United States v. Stephenson*, 924 F.2d 753, 758 (8th Cir. 1991)). We will reverse a finding of fact for clear error only "if, despite evidence supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake." *United States v. Williams*, 346 F.3d 796, 798 (8th Cir. 2003).

Because the assessment of a witness's credibility is the province of the trial court, a credibility determination "is virtually unreviewable on appeal." *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir. 1995). "A . . . decision to credit a witness's testimony over that of another can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story or the story is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." *Id.* (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 575–76 (1985)).

A traffic stop is a seizure within the meaning of the Fourth Amendment and it is only constitutional if the stop was reasonable. *See United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008). "Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006).

"It is well established that '*any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver.'" *Id.* (quoting *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001)). "Probable cause [also] exists when a reasonable officer, confronted with the facts known to the officer at the time of the stop, could have believed that there was a fair probability that a violation of law had occurred." *United States v. Andrews*, 454 F.3d 919, 921 (8th Cir. 2006). "Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop," and "[m]istakes of law or fact, if objectively reasonable,

may still justify a valid stop." *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)).

It is undisputed that if Holly failed to stop at the stop sign, such failure would be a violation of Missouri law. *See* Mo. Rev. Stat. § 304.351. However, Holly argues his experts' recreation reveals the officers had no basis to believe he ran the stop sign. We disagree.

The district court credited the officers' account—that they observed or inferred Holly failed to stop—over the experts' recreation of the incident ostensibly showing that was not possible. We do not believe this was clearly erroneous. Credibility determinations are entitled to great deference. *See Heath*, 58 F.3d at 1275. In this case there is no extrinsic evidence that clearly contradicts the officers' account, nor was the officers' testimony "so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it." *Id.* While Holly's experts' recreation purported to show the officers could not observe Holly's SUV at the intersection of College and Swope, it was not dispositive of the issue, particularly because the experts admitted they were unable to recreate the exact circumstances of the events. As the district court noted, "[t]his inability to fully replicate the circumstances that the officers testified were present makes the officers' testimony more credible as to what actually occurred on August 5, 2017." The district court ultimately gave more weight to the testimony of Officers Tarwater and Whetro, and we do not believe that the officers' testimony was so incredible or inconsistent as to justify disturbing the district court's finding. *See Heath*, 58 F.3d at 1275.

Having accepted the district court's findings of fact, we conclude Officers Tarwater and Whetro had probable cause to believe Holly had committed a traffic violation. Therefore, the stop of Holly's vehicle was reasonable and not a violation

of the Fourth Amendment. Even if one of the officers was mistaken about actually observing the violation, the surrounding circumstances—the speed of the SUV and its position relative to the patrol vehicle—could lead a reasonable officer to believe Holly had failed to stop as required by Missouri law.

The judgment of the district court is affirmed.

_____