# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3294
_____

United States of America

*Plaintiff - Appellee*

v.

Orlando Ray Gray

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 12, 2023
Filed: October 6, 2023
_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Orlando Ray Gray was charged with being a felon in possession of a firearm in July and November 2020 and March 2021. 18 U.S.C. §§ 922(g)(1), 924(a)(2). Gray pleaded guilty to Count 3, admitting in a Plea Agreement that he drove a stolen vehicle in March 2021 and was arrested when he fled from the vehicle with two loaded firearms. The government agreed to dismiss the other two counts. Gray stipulated that he possessed a firearm on the dates charged in the other counts, and

that possession of those firearms was relevant conduct for sentencing purposes. The parties agreed on other Guidelines calculations, but Gray did not agree with the government's contention that his offense level should be increased four levels because he possessed a firearm "in connection with another felony offense" (drug trafficking). USSG § 2K2.1(b)(6)(B). The parties agreed the district court[1] would determine this issue and "no evidentiary hearing is necessary."

At sentencing, the district court overruled Gray's objection and imposed the four-level increase, resulting in an advisory guidelines sentencing range of 130 to 162 months imprisonment. Gray appeals his 120-month sentence (the statutory maximum). The issue on appeal is whether the district court erred by imposing the four-level increase. "In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm 'facilitated' that other felony. . . . When the issue is whether the evidence supports these findings, we review the district court's determination for clear error." United States v. Holm, 745 F.3d 938, 940 (8th Cir. 2014) (citations omitted). Finding no clear error, we affirm.

The four-level increase at issue applies if Gray "used or possessed any firearm or ammunition in connection with another felony offense." USSG § 2K2.1(b)(6)(B). Gray stipulated that his firearm possession on July 13, 2020 was relevant conduct to his March 2021 offense of conviction. See USSG § 1B1.3(a) and comment. (n.5(B)(ii)). Therefore, the increase applies if, as the district court found, Gray possessed the firearm on July 13 in connection with a drug trafficking offense. The issue turns on whether the district court clearly erred in finding, by a preponderance of the evidence, that Gray's firearm possession "facilitated, or had the potential of

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

-2-

facilitating" another felony offense. § 2K2.1, comment (n.14(A)); see United States v. Sneed, 742 F.3d 341, 344 (8th Cir. 2014).

Gray's Presentence Investigation Report ("PSR"), to which the defense made no factual objection, stated in The Offense Conduct section of the Report:

8. On July 13, 2020, Ramsey County [Violent Crime Enforcement Team], with the assistance of the Drug Enforcement Administration (DEA), were conducting surveillance on a female they suspected to be involved in narcotics trafficking. The officers observed the female driving to different locations and committing suspected narcotics sales. Eventually, the female picked up a male, later identified as Orlando Ray Gray, from a gas station. The investigating officers asked the Maplewood Police Department (MPD) to conduct a traffic stop on the vehicle, and an MPD officer identified the driver as Elicia Maria Hernandez, the front passenger as Ida Mae Burton, and the rear passenger as Orlando Gray. As the occupants appeared nervous and the officer saw a glass "bong" style pipe, commonly used to smoke controlled substances, in plain view, he used a canine to search the vehicle and found 6 grams of methamphetamine and a black container containing a loaded . . . 40-caliber pistol . . . . where Gray was sitting.

9. On July 14, 2020, Gray, post *Miranda*, was interviewed by police officers while in custody. The defendant stated he knew drug dealers who dealt large quantities of narcotics and were members of the "Latin Kings" street gang. Gray stated he is like a bodyguard for Steve Rodriguez, a "Latin King" gang member, and that he has a reputation for "shooting." Gray also stated the other occupants of the vehicle "call me when they want someone around with a gun." He noted that [he] had a romantic relationship with Ida Burton. He met Elicia Hernandez for the first time that day but knew she was a pound level dealer and she "just got robbed for four pounds of methamphetamine."

The PSR recommended a four-level § 2K2.1(b)(6)(B) increase because Gray possessed a firearm on July 13, 2020 while acting as a bodyguard for drug traffickers.

Gray's pre-hearing Position on Sentencing repeated his Plea Agreement objection to the four-level increase. Then, in a Supplemental Position on Guidelines filed before the sentencing hearing, Gray argued that an increase for possession in connection with drug trafficking was not warranted because the evidence is insufficient to show that he knowingly possessed the 6 grams of methamphetamine found in the back seat for drug trafficking, and he "did not tell police he possessed the firearm on July 13 in his role as a bodyguard for individuals engaged in the sale of narcotics." Gray went on to argue at length that the firearm did not "facilitate" any drug possession offense.[2]

At sentencing, the district court challenged defense counsel's emphasis on the possession of 6 grams of methamphetamine in the back seat near Gray because "[t]he PSR puts the 4 points of enhancement because he's the enforcer for drug dealers." Defense counsel responded:

> Well, okay, so two answers to that. Number one is that the PSR attributes a statement to [Gray] that we have objected to, and I state here that Mr. Gray did not tell the police he possessed the firearm on July 13th in his role as a bodyguard for individuals engaged in the sale of narcotics. . . . So that's why the specific objection is raised that he didn't tell them that as to that July 13th gun.

> And then the rest of the briefing . . . is that in order for the Court to [a]pply the enhancement, there has to be a drug trafficking offense, not just some general claim of misbehavior. And there is no drug trafficking crime otherwise charged, available in the PSR or in this entire case. It just doesn't exist.

---

[2]We have repeatedly emphasized that the addition of Application Note 14 to USSG § 2K2.1(b)(6) in 2006 "established a higher threshold for proving that firearms facilitated the drug offense when the separate felony is a drug-possession offense rather than a drug-trafficking offense." United States v. Dalton, 557 F.3d 586, 588 (8th Cir. 2009).

The district court denied Gray's belated objection, "adopt[ed] the PSR as written and include[d] the 4-level" increase in determining the advisory guidelines range.

On appeal, treating as fact his unproven assertion that paragraph 9 of the PSR contains an inaccurate statement as to what he told police officers in his post-*Miranda* interview, Gray argues the government (i) failed to prove a drug-trafficking offense, and (ii) the 6 grams of methamphetamine found with Hernandez's clothing in the back seat of the car with Gray and his firearm does not establish possession in connection with a drug *possession* offense. Like the district court, we need not consider the drug-possession issue. We reverse for clear error only if we are "left with the definite and firm conviction that a mistake has been committed." United States v. Nilsen, 18 F.4th 587, 589 (8th Cir. 2021). Here, we conclude that the unobjected-to facts in paragraphs 8 and 9 of the PSR, together with Gray's other, unchallenged admissions in the police interview, and the undisputed observations of officers surveilling Hernandez's vehicle that day establish that the district court's "in connection with" finding was supported by a preponderance of the evidence that was properly before the court at sentencing:

First, we note that Gray did not timely object to paragraphs 8 and 9 of the PSR, so the district court was entitled to adopt *every statement* as proven.

Second, Gray made no effort -- in the district court or on appeal -- to establish the asserted PSR mistake. Apparently, Gray's assertion is based on a recording of his interview that was introduced as an exhibit at a contested motions hearing conducted by a magistrate judge long before Gray's guilty plea and sentencing. Gray made no attempt to have the exhibit made part of the sentencing record, where it could be reviewed and considered by the district court. So, objection not preserved.

Third, Gray makes no effort to explain the significance of the asserted mistake to the in-connection-with finding that is essential to the 4-level increase at issue. He

simply argues the district court "committed procedural error by misinterpreting and misapplying the Guidelines." Again, sentencing issue not preserved.

Finally, we consider what the undisputed evidence at sentencing did prove, recognizing that "[t]he district court was entitled to draw reasonable inferences from the record." United States v. McArthur, 11 F.4th 655, 663 (8th Cir. 2021):

(i) First, on July 13, 2020, police were surveilling Elicia Maria Hernandez, a suspected narcotics trafficker. They observed Hernandez drive to different locations and engage in suspected drug sales. Hernandez picked up Gray at a gas station. When a local police officer stopped the vehicle, driver Hernandez, passenger Ida Burton, Gray's girl friend, and Gray in the back seat appeared nervous. Gray was holding a glass pipe of a type commonly used to smoke methamphetamine. A canine unit sniffed the vehicle and alerted to narcotics. In the rear driver's-side back seat where Gray had been sitting, officers found a clear bag containing six grams of methamphetamine and a lunch box containing a loaded handgun and debit cards in Gray's name under a pile of clothing.

(ii) Second, taken into custody, Gray admitted the handgun was his. During a narcotics officer interview the next day, he told the officers he knew narcotics drug dealers in the "Latin Kings" street gang, has a reputation for "shooting," and acts as a bodyguard for a "Latin Kings" drug dealer named Steve. He said that drug dealers "call me when they want someone around with a gun."

(iii) Third, Gray also told the officers that he had a romantic relationship with Ida Burton. He had just met Elicia Hernandez on July 13 but knew she was a pound-level drug dealer who had recently been robbed of four pounds of methamphetamine.

We conclude this was sufficient evidence for the district court to infer that Hernandez was trafficking drugs on July 13 and had picked up Gray, a known

"shooter," to protect her trafficking activities from further robberies. Gray argues that 6 grams of methamphetamine in the back seat was too small a quantity to support an in-connection-with drug trafficking or drug possession finding. That is a frequently-litigated issue because, "[i]If the felony is for drug trafficking, Application Note 14(B) *mandates* application of the adjustment if guns and drugs are in the same location." United States v. Blankenship, 552 F.3d 703, 705 (8th Cir. 2009) (emphasis added).

A jury or sentencing court "may infer the required nexus when the firearm is kept in close proximity to the drugs." United States v. Shaw, 751 F.3d 918, 922 (8th Cir. 2014) (quotation omitted). But proximity to specific drugs is not *required*. The increase applies if Gray possessed any firearm "in connection with another felony offense." That includes serving as a bodyguard to protect Hernandez in her drug trafficking with third parties that day, not just the distribution of the small quantity of methamphetamine found with the firearm in the back seat of the vehicle Hernandez was driving. Here, surveillance provided evidence that Hernandez was trafficking narcotics. Gray admitted he was known as a "shooter" who protected drug dealers, and he knew that Hernandez was a "pound level" drug dealer who had just been robbed. On these undisputed facts, the court could find by a preponderance of the evidence that Gray's possession of the firearm facilitated -- was "in connection with" -- Hernandez's drug trafficking. The court did not clearly err in applying the four-level § 2K2.1(b)(6)(B) increase.

The judgment of the district court is affirmed.

_____